| UNITED STATES DISTRICT COURT | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: |
| | DATE FILED: 9/18/2019 |

```
------------------------------------------------------------- X
EFRAIN FERNANDEZ AGUIRRE,           :
                        Petitioner, :
                                    :
        -against-                   :       19-CV-7048 (VEC)
                                    :
WILLIAM BARR, KEVIN MCALEENAN,      :       MEMORANDUM
MATTHEW ALBENCE, JAMES MCHENRY,     :         OPINION
THOMAS DECKER, and CARL DUBOIS,     :
                                    :
                       Respondents. :
------------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Petitioner Efrain Fernandez Aguirre, who was detained by the immigration authorities, filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, and a motion for a preliminary injunction, seeking a bond hearing with constitutionally-adequate procedures. *See* Pet., Dkt. 2; Notice of Mot., Dkt. 8. On August 16, 2019, this Court granted in part the preliminary injunction and ordered the immigration court to provide Petitioner with a bond hearing in which the Government bore the burden of proving the need for detention by clear and convincing evidence. *See* Order, Dkt. 21. On August 22, 2019, Petitioner moved to enforce the preliminary injunction, arguing that the immigration court had failed to comply with the Court's August 16 order. *See* Notice of Mot., Dkt. 23. On August 26, 2019, the Court held oral argument, agreed that the immigration court had failed to comply with the Court's order, and ordered Petitioner to be immediately released from detention. *See* Order, Dkt. 30. This opinion explains the Court's ruling.

Because the Court's ruling has granted all of the relief requested in the Petition, no later than **October 4, 2019**, Petitioner must show cause why the Petition should not be deemed granted and this case marked closed.

# BACKGROUND

The facts of this case are set forth in an opinion that the Court entered on August 19, 2019, which explained the basis for the Court's August 16 order. *See* Opinion, Dkt. 22, 2019 WL 3889800, at *1–2 (slip op. at 1–3). As relevant here, on January 10, 2019, Petitioner was placed into removal proceedings and charged with being present in the United States without having been admitted or paroled. *See id.* at *1 (slip op. at 2). Upon his arrest, Petitioner was detained by the immigration authorities pursuant to 8 U.S.C. § 1226(a). *See id.* On May 1, 2019, an immigration judge ("IJ") conducted a bond hearing. *See id.* At the hearing, pursuant to Board of Immigration Appeals ("BIA") precedent, the IJ placed the burden on Petitioner to prove that he was not a danger to the community or a flight risk in order to be released on bail. *See id.* The IJ denied bail to Petitioner. *See id.* at *1 (slip op. at 3).

On July 29, 2019, Petitioner filed the Petition and motion for a preliminary injunction, seeking a new bond hearing in which the Government bore the burden of proving the need for his detention by clear and convincing evidence, among other procedural safeguards. On August 16, 2019, this Court granted in principal part the motion for a preliminary injunction. *See* Order, Dkt. 21. The Court ordered that:

> [T]he Government must provide Petitioner with an individualized bond hearing in which, in order to justify Petitioner's continued detention: (1) the Government must bear the burden of proving, by clear and convincing evidence, that Petitioner presents either a flight risk or a danger to the community; and (2) alternatives to detention and Petitioner's ability to pay for a bond must be considered. If the Government fails to provide such a hearing by that date, the Government must immediately release Petitioner.

*Id.* at 1–2. On August 19, 2019, the Court filed an opinion explaining that the procedures the Court had ordered were required by the Due Process Clause of the Fifth Amendment. *See* Opinion, Dkt. 22, 2019 WL 3889800, at *2–3 (slip op. at 4–5).

On August 21, 2019, the immigration court conducted a new bond hearing. *See* Supp. Kim. Aff., Dkt. 25, Exs. A–B. At the outset of the hearing, the IJ noted that pursuant to this Court's order, "the government has the burden [of] proving [by] clear and convincing evidence that the Petitioner presents either a flight risk or a danger." *Id.* Ex. A at 1. The Government argued that detention was warranted because Petitioner was both a danger to the community and a flight risk. *See id.* at 3–5.

As to dangerousness, the Government's evidence was limited to Petitioner's history of arrests and traffic violations. *See* Supp. Kim. Aff. Ex. A at 3–5; *id.* Ex. C. The Government provided the IJ with Petitioner's rap sheet, showing that Petitioner had been arrested twice, once on state charges of forcible touching (charges that were adjourned in contemplation of dismissal and later dismissed) and once on state charges of strangulation, assault, menacing, resisting arrest, and acting in a manner likely to injure a child (all of which were dismissed except for resisting arrest, as to which Petitioner pleaded guilty). *See id.* Ex. A at 3–4; *id.* Ex. C. The Government also provided the IJ the complaint and indictment associated with those charges; those documents alleged that Petitioner committed the strangulation offense against his domestic partner and that he committed the forcible-touching offense by grabbing the breasts of a female bouncer who was escorting him out of a bar late at night. *See id.* Ex. C. Additionally, the Government noted that Petitioner had multiple traffic violations, such as failing to use headlights and driving without a license. *See id.* Ex. A at 3; *id.* Ex. C. The Government presented no further evidence of Petitioner's dangerousness. *See id.* Ex. A at 3–5; *id.* Ex. C.

The Government argued that Petitioner was a flight risk because he was unlikely to be granted relief from removal because his application for asylum was (in the Government's view) time-barred, and his other applications for relief required a "high burden" of proof. Supp. Kim.

Aff. Ex. A at 4–5. The Government argued that these facts, "coupled with his criminal history and his violations of immigration law," established that Petitioner was a flight risk. *Id.* at 5. Later in the hearing, the IJ noted that Petitioner's rap sheet showed that a bench warrant had been issued for Petitioner for failing to appear in a prior criminal proceeding. *See id.* Ex. A at 3–5; *id.* Ex. C.[1] The Government presented no further evidence of flight risk. *See id.* Ex. A at 3–5; *id.* Ex. C.

The IJ denied bail, finding that Petitioner was both a flight risk and a danger to the community. *See* Supp. Kim Aff. Ex. A at 9–10. As to flight risk, the IJ stated, without explanation, that Petitioner's bench warrant indicated that he was "a significant flight risk." *Id.* at 10. As to dangerousness, the IJ relied principally on Petitioner's plea to resisting arrest. *See id.* The IJ reasoned that "[r]esisting arrest is a danger to the community," *id.* at 9, because it presents the possibility that "maybe somebody could get hurt," *id.* at 7. The IJ also noted that the allegations in the complaint that charged Petitioner with forcible touching were "[o]f concern," *id.* at 9, and that Petitioner's traffic infractions, while not themselves violent, were generally "indicative of a mindset," and, therefore, probative of dangerousness, *id.* at 7. The IJ later clarified, in reference to Petitioner's plea to resisting arrest, that "[f]or that reason alone, [he] would deny bond." *Id.* at 10.

The next day, on August 22, 2019, Petitioner filed a motion to enforce the preliminary injunction, arguing that the second bond hearing had not complied with this Court's orders because the IJ had failed to consider alternatives to detention and had not properly applied the

---

[1] Petitioner failed to appear at that proceeding because he was, at the time, incarcerated on different charges. *See* Supp. Kim. Aff. ¶ 9. This fact was not discussed at the second bond hearing, however, because the Government did not make it clear and because the IJ cut off Petitioner's attorney before she should could explain it. *See id.* ¶ 10.

clear-and-convincing standard. *See* Pet.'s Mem. of Law, Dkt. 24, at 1–10. Petitioner asked the Court to order his immediate release as a remedy. *See id.* at 10–11.

## DISCUSSION

I. **The Court Has Jurisdiction over Petitioner's Motion**

  A. **The Court Has Jurisdiction Pursuant to Its Authority to Enforce Conditional Grants of the Habeas Writ**

"It is well-settled that a district court can order a petitioner's release" when granting a petition for writ of habeas corpus. *Phifer v. Warden, U.S. Penitentiary, Terre Haute, Ind.*, 53 F.3d 859, 864 (7th Cir. 1995). "This, in fact, is the very essence of habeas relief." *Id.* Courts, however, ordinarily favor "conditional grants" of the writ. *Gentry v. Deuth*, 456 F.3d 687, 691–92 (6th Cir. 2006). A conditional grant occurs when a court finds that "a constitutional infirmity justifies [the] petitioner's release" but, as an "accommodation[]" to the Government, the court "provides the [Government] with a window of time" to "cure the constitutional error" before release is ordered. *Phifer*, 53 F.3d at 862, 864–65; *see also Gentry*, 456 F.3d at 691–92; *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 234–35 (W.D.N.Y. 2019); *Rosa v. McCray*, No. 03-CV-4643, 2004 WL 2827638, at *4 (S.D.N.Y. Dec. 8, 2004). The district court retains jurisdiction to review the Government's compliance with the conditional grant, that is, to determine whether the Government properly cured the identified constitutional error. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011); *Gibbs v. Frank*, 500 F.3d 202, 206 (3d Cir. 2007); *Gentry*, 456 F.3d at 692; *Phifer*, 53 F.3d at 865. If the Government fails to cure the error, the court may grant the petition in full and order the Petitioner's release. *See Gentry*, 456 F.3d at 692; *Phifer*, 53 F.3d at 865; *Hechavarria*, 358 F. Supp. 3d at 243–44; *Rosa*, 2004 WL 2827638, at *4.

The Petition for Writ of Habeas Corpus in this case sought a bond hearing with constitutionally-adequate procedural protections. Petitioner's motion for a preliminary injunction, filed the same day, sought substantially the same relief. The Court's orders granting the preliminary injunction, therefore, were essentially a conditional grant of the habeas writ: in those orders, the Court agreed with Petitioner that the first bond hearing violated the Due Process Clause, provided the Government one week to cure the constitutional errors, and warned that failure to do so would result in Petitioner's immediate release. Thus, upon entering those orders, the Court retained jurisdiction to review the Government's compliance. *See Leonardo*, 646 F.3d at 1161; *Gibbs*, 500 F.3d at 206; *Gentry*, 456 F.3d at 692; *Phifer*, 53 F.3d at 865.

In the present motion, Petitioner argues that the Government failed to comply with the Court's orders because his second bond hearing contained largely the same constitutional errors as the first. This Court plainly has jurisdiction to review such a claim. Indeed, were jurisdiction found to be lacking here, the Court's prior orders would be essentially toothless, as the Court would have no mechanism to enforce them. *See Hechavarria*, 358 F. Supp. 3d at 235 ("[C]onditional writs 'would be meaningless' if a habeas court could not determine compliance with them." (quoting *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013))).

**B.     8 U.S.C. § 1226(e) Does Not Strip the Court of Jurisdiction to Review Petitioner's Motion**

The Government argues that 8 U.S.C. § 1226(e) bars this Court from reviewing Petitioner's motion. That provision states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). The Government concedes that although this provision forecloses review of a challenge to an IJ's "discretionary determinations," the provision "does not preclude review of '[c]laims of constitutional infirmity in the procedures followed at a bond hearing.'" Gov. Mem. of Law, Dkt. 28, at 9 (quoting *Bogle v. DuBois*, 236 F. Supp. 3d 820, 822 (S.D.N.Y. 2017)). That concession is grounded in Supreme Court precedent. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Petitioner's motion raises constitutional claims. He argues that the IJ failed in the second bond hearing to consider alternatives to detention and failed to hold the Government to proof by clear and convincing evidence. *See* Pet.'s Mem. of Law, Dkt. 24, at 5–10 & n.2. Specifically, as to the latter argument, Petitioner argues that the evidence adduced at the hearing does not, as a matter of law, establish flight risk or dangerousness to a clear-and-convincing standard (put differently, that no rational person could find that the evidence adduced at the hearing satisfies the clear-and-convincing standard). *S*ee Pet.'s Mem. of Law at 5–10 & n.2; Pet.'s Reply Mem. of Law, Dkt. 29, at 4 n.3. Because this Court has held that consideration of alternatives to detention and proof by clear and convincing evidence are required by the Due Process Clause, Petitioner's claims are of a constitutional dimension. *See Argueta Anariba v. Shanahan*, No. 16-CV-1928, 2017 WL 3172765, at *4 (S.D.N.Y. July 26, 2017) (an argument that an IJ failed "to apply the correct legal standard and to hold the government to its burden of proof" is an argument that the bond hearing was "constitutionally deficient").

Section 1226(e) does not bar review of these claims. By its plain language, that provision bars review only of an IJ's "discretionary" determinations, such as an IJ's weighing of different pieces of evidence; it does not apply to claims that the IJ failed to comply with constitutionally-mandated procedures in reaching those determinations. As one court put it, "[t]o the extent

7

[Petitioner] complains that his bond hearing was constitutionally deficient—that is, that the [G]overnment's evidence could not, as a matter of law, establish clearly and convincingly that [he] was dangerous, and therefore he was not accorded the process he is due—he can seek redress from this Court." *Cepeda v. Shanahan*, No. 15-CV-9446, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016).[2]

## II. The Second Bond Hearing Did Not Comport with Due Process or with this Court's Orders

Petitioner's second bond hearing fell far short of the procedures required by due process and by the Court's August 16 and August 19 orders.

First, the IJ failed to consider alternatives to detention. The bond hearing transcript is utterly void of any discussion of whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that Petitioner posed to the safety of the community. *See* Supp. Kim. Aff. Ex. A. The Government does not dispute this as a factual matter; instead, the Government argues that consideration of such alternatives is appropriate only *after* an IJ has found that detention is not necessary. *See* Gov. Mem. of Law at 17–18. In the Government's view, "if the [migrant] presents a danger to the community, he is not supposed to be released"; "only if the [migrant] is not a danger may the immigration judge [then] consider alternatives to detention." *Id.* This argument has the standard backwards. In the August 16 order, this Court stated that "*in order to justify* Petitioner's continued detention

---

2     *See also, e.g.*, *Hechavarria*, 358 F. Supp. 3d at 235–36; *Torres v. Decker*, No. 18-CV-10026, 2018 WL 6649609, at *1 (S.D.N.Y. Dec. 19, 2018); *Enoh v. Sessions*, No. 16-CV-85, 2017 WL 2080278, at *5 (W.D.N.Y. May 15, 2017); *Vargas v. Davies*, No. 15-CV-3525, 2016 WL 3044850, at *4 (S.D.N.Y. May 27, 2016) (collecting cases) (granting Petitioner leave to amend his petition because "Petitioner may have a viable constitutional claim to the extent he is asserting that the IJ effectively failed to apply a clear-and-convincing standard by relying on evidence that can never alone satisfy that standard as a matter of law"); *cf. Liu v. I.N.S.*, 508 F.3d 716, 721 (2d Cir. 2007) (Court of Appeals would have jurisdiction to review an asylum determination if "the IJ used the wrong legal standard in coming to his determination" or if "the IJ articulated the correct standard . . . [but] erroneously applied a heightened standard" (emphasis omitted)).

... alternatives to detention . . . must be considered." Order, Dkt. 21 (emphasis added). In other words, the Court's order required the IJ to consider alternatives to detention *before* concluding that detention was appropriate. That procedure was intended to track the framework for pretrial detention in the criminal context, where the purpose of considering alternatives is to determine whether measures less intrusive than detention can achieve the same goal (reasonably assuring the safety of the community). *See* 18 U.S.C. § 3142(e)(1) (allowing pretrial detention in criminal cases only if a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community"); *United States v. Johnson*, 547 F. App'x 64, 65 (2d Cir. 2013); *United States v. Berrios-Berrios*, 791 F.2d 246, 251 (2d Cir. 1986); *United States v. Paulino*, 335 F. Supp. 3d 600, 612 (S.D.N.Y. 2018) (denying the Government's application for pretrial detention because the defendant's bail conditions were "more than adequate to mitigate any concerns regarding dangerousness or risk of flight that might exist"). By failing to consider alternatives to detention, the IJ failed to comply with the requirements of due process.[3]

Second, the IJ failed to comply with the standard of proof required by this Court's orders. The evidence adduced at the hearing was so minimal that it did not, as a matter of law, establish Petitioner's dangerousness by clear and convincing evidence. "[C]lear and convincing evidence . . . means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

---

[3] The Government's argument appears to rely on BIA precedent, which states that an IJ should consider alternatives to detention only "if he *first* determines that the [migrant] does not present a danger to the community." *Matter of Urena*, 25 I. & N. Dec. 140, 141 (B.I.A. 2009) (emphasis added); *see also* Gov. Mem. of Law at 17–18. The Government's citation to BIA precedent is puzzling. That precedent is precisely the source of the constitutional infirmities that this Court identified in its prior orders. Indeed, in the same case, the BIA held that the migrant should bear the burden of proof in a bond hearing—again, exactly the procedure that this Court has held is constitutionally deficient. *See Matter of Urena*, 25 I. & N. Dec. at 141. The Government provides no reason why the BIA's holdings should control this Court's constitutional analysis. *See Hechavarria*, 358 F. Supp. 3d at 242 (rejecting a variation of the Government's argument).

"To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *Id.* Here, the evidence of dangerousness consisted, in its entirety, of a rap sheet and two charging instruments. The rap sheet showed that Petitioner had some traffic tickets, charges for low-level state offenses (all of which were dismissed and all but one of which were misdemeanors), and a guilty plea to resisting arrest (also a misdemeanor). The charging instruments added very little to this analysis, and neither the Government nor the IJ made any attempt to substantiate the allegations in those documents.[4] In fact, neither the Government nor the IJ made any effort to marshal any evidence beyond these documents: in the entire hearing, no other documentary evidence was offered, no proffers of evidence were made, and no witness testimony was taken. Based on this record, no reasonable fact-finder could find by clear and convincing evidence that Petitioner posed a danger to the community. That conclusion is beyond serious dispute.

The IJ arrived at a different conclusion because he relied on impermissible speculation and, therefore, failed to apply the standard of proof required by this Court's orders. During the hearing, the IJ stated that he believed that "resisting arrest is a violent offense" because "maybe somebody could get hurt if a person resists arrest." Supp. Kim Aff. Ex. A at 7. He also stated that detention of Petitioner was warranted based on the conviction for resisting arrest "alone." *Id.* at 10. When rendering his decision, the IJ began his analysis with a recitation of the elements of resisting arrest:

---

[4] The Government argues that charging instruments and rap sheets may properly be considered by IJs in making bail determinations. *See* Gov. Mem. of Law at 13–14. The Court has no quarrel with that assertion. The Court holds only that the documents in *this* case, combined with all of the other evidence in the record, did not, as a matter of law, come anywhere close to showing by clear and convincing evidence that Petitioner posed a danger to the community.

> Resisting arrest is a danger to the community. [Petitioner] admitted it as recently as January 10th. [New York] Penal Law states a person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from affecting an authorized arrest of himself or another person. If that's not a danger to the community, then I don't know what is.

*Id.* at 9. The elements of a person's prior offense may, in some circumstances, be relevant to a court's determination of the person's dangerousness. But here, the elements provide no information about whether Petitioner, when he resisted arrest, engaged in any sort of violence or otherwise endangered the safety of the community. *See People v. Stevenson*, 31 N.Y.2d 108, 112 (1972) (resisting arrest does not require "that a defendant use force or violence" (internal quotation marks omitted)). The elements of resisting arrest, then, are of extremely limited probative value in assessing Petitioner's dangerousness *vel non*. Nevertheless, the IJ did not examine the facts underlying Petitioner's resisting-arrest conviction; the record contains no evidence at all of the conduct underlying that conviction.[5] In order to arrive at the conclusion that Petitioner was dangerous, therefore, the IJ had to have engaged in conjecture and guesswork about facts not in the record before him. That is not, as a matter of law, permitted in a rational fact-finding exercise—and certainly not in one where the standard of proof is clear and convincing evidence. *See Hechavarria*, 358 F. Supp. 3d at 241 ("If the clear and convincing standard means what it says, it cannot permit detention based on mere speculation that [a migrant's] release might possibly pose a danger."); *cf. United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (in the context of a criminal trial, a reasonable finding of fact is a "logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist," not a mere "suspicion or a guess"). In short, the uncontested record demonstrates that the

---

[5] Although the complaint charging Petitioner with forcible touching sets forth some details of the offense (that Petitioner allegedly grabbed the breasts of a female bouncer who was escorting him out of a bar), the instruments charging him with resisting arrest do not contain any such factual detail. *See* Supp. Kim. Aff. Ex. C.

IJ did not comply with this Court's order to apply the clear-and-convincing standard when assessing whether Petitioner was a danger to the community.

The IJ also failed to comply with this Court's direction to apply the clear-and-convincing standard when assessing whether Petitioner was a flight risk. As with the evidence of dangerousness, the evidence of flight risk was so insignificant that it did not, as a matter of law, establish flight risk by clear and convincing evidence. The IJ's finding that Petitioner was a flight risk was based solely on the fact that Petitioner had, in July 2018, "received a bench warrant . . . for failure to appear [in] a criminal case." Supp. Kim. Aff. Ex. A at 10. The IJ made no attempt to inquire into the circumstances of the bench warrant; if he had, he would have learned that the bench warrant was issued because Petitioner was, at that time, incarcerated on different criminal charges and, therefore, obviously unable to attend a court appearance. *Id.* ¶ 9. Given that fact, combined with Petitioner's record of attending other court appearances and the total absence of any other evidence suggesting a risk of flight, no reasonable person could find, based on this record and by clear and convincing evidence, that Petitioner was a flight risk. The IJ, therefore, failed to comply with this Court's order to apply that standard of proof.

For all these reasons, the inescapable conclusion is that the IJ failed to comply with this Court's orders and to hold the Government to its constitutionally-required burden of proof.

## III. Release of Petitioner is an Appropriate Remedy

The Government's "[f]ailure to cure" a constitutional error identified in a conditional writ of habeas corpus "justifies the district court's release of the petitioner." *Phifer*, 53 F.3d at 865; *see also Gentry*, 456 F.3d at 692; *Hechavarria*, 358 F. Supp. 3d at 243–44; *Rosa*, 2004 WL 2827638, at *4.

During oral argument, the Government argued that the Court should remand for a third bond hearing, rather than ordering Petitioner's release. *See* Tr. of Aug. 26, 2019 Conf., Dkt. 32, at 14–16. The parties did not fully brief the issue of remedy, and the authorities appear divided over whether the Court has discretion to consider remedies other than release or, alternatively, whether the Government's failure to cure a constitutional error following entry of a conditional writ automatically requires the petitioner's release. *See Harvest v. Castro*, 531 F.3d 737, 742–44 (9th Cir. 2008) (collecting cases). The Court need not decide this issue because immediate release would be an appropriate remedy even if the Court had discretion to remand for another bond hearing.

The Court's prior orders placing the burden of proof on the Government should have been a very clear signal that the Government, at the second bond hearing, would need to marshal its evidence to show that Petitioner was dangerous or a flight risk. Rather than doing so, the Government simply photocopied the evidence packet that Petitioner had offered to *disprove* his alleged dangerousness and flight risk at the first bond hearing (when Petitioner bore the burden of proof). *See* Pet's Mem. of Law at 2 (citing Supp. Kim. Aff. Ex. A at 1–3). The Government submitted the packet to the IJ in the second bond hearing without making any effort to develop further evidence, whether about the facts underlying the charges that had been dismissed or otherwise. The IJ at the second bond hearing, for his part, showed no inclination to engage in fact-finding or even any real understanding of what this Court's orders required. Although he recited the words "clear and convincing" at the outset of the hearing, Supp. Kim. Aff. Ex. A at 1, his statement that a plea to resisting arrest is "alone" enough to warrant detention demonstrates that he did not understand (or attempt to apply) the clear-and-convincing standard, *id.* at 10. And his failure even to mention alternatives to detention evidences a failure to appreciate the

importance of that procedure to the Court's orders. The Court, therefore, has little confidence that allowing the Government a second do-over would reach a different, more constitutionally-permissible result.

Those facts, standing alone, would have been sufficient to make immediate release an appropriate remedy. The Court notes two additional facts that supported that conclusion. First, at the time that this motion was filed, Petitioner was scheduled to appear within a matter of days for a hearing on his asylum application. *See* Opinion, Dkt. 22, 2019 WL 3889800, at *1 (slip op. at 2). In the August 19 opinion, the Court found that Petitioner's continued detention was interfering with his ability to prepare for that hearing. *See id.* at *3–4 (slip op. at 6–7). The fact that a third bond hearing would have caused delay and further hamstrung Petitioner's ability to prepare for the asylum hearing weighed in favor of immediate release and against giving the Government another do-over. Second, at the time the motion was filed, the Government had detained Petitioner for more than seven months without having offered any constitutional basis for doing so. *See id.* at *1 (slip op. at 2). That is simply not acceptable in this country, and that fact also weighed in favor of immediate release.

For all these reasons, the Court granted the motion to enforce the preliminary injunction and ordered Petitioner's immediate release.[6]

Because the Court's ruling granted all of the relief requested in the Petition, no later than **October 4, 2019**, Petitioner must show cause why the Petition should not be deemed granted and this case marked closed.

---

[6] The Government argues that Petitioner should be required to exhaust his administrative remedies before seeking relief from this Court. *See* Gov. Mem. of Law at 19–20. As stated in the August 19 opinion, only prudential, not statutory, exhaustion applies here. *See* Opinion, Dkt. 22, 2019 WL 3889800, at *3–4 (slip op. at 5–7). For the reasons stated in that opinion, the Court excused Petitioner from the exhaustion requirements. *See id.*

14

## CONCLUSION

For all the foregoing reasons, the Court GRANTED Petitioner's motion to enforce the preliminary injunction and ordered Petitioner to be immediately RELEASED. No later than **October 4, 2019**, Petitioner must show cause why the Petition should not be deemed granted and this case marked closed.

The Clerk of Court is respectfully directed to close the open motion at Dkt. 23.

**SO ORDERED.**

Date: September 18, 2019
New York, New York

VALERIE CAPRONI
United States District Judge